# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SD STUDENT DOE #1,<br><br>                    Plaintiff,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br>                    Defendants. | Case No.: 25-cv-926-RSH-BLM<br><br>**ORDER GRANTING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>[ECF No. 3] |

Before the Court is a motion to proceed by pseudonym, for a protective order, and for a temporary restraining order ("TRO") filed by Plaintiff Doe. ECF No. 3. Plaintiff moves for a TRO enjoining the termination of his Student and Exchange Visitor Information System ("SEVIS") record maintained by Immigration and Customs Enforcement ("ICE"). On April 24, 2025, the Court held a hearing on Plaintiff's motion. For the reasons stated on the record and below, the Court grants Plaintiff's motion.

///

///

## I. BACKGROUND

### A. Statutory and Regulatory Background

#### 1. *F-1 Visas*

The Immigration and Nationality Act ("INA") "sets the terms on which consular officers at U.S. embassies and consulates abroad may issue visas to both prospective 'immigrants' and 'nonimmigrants.'" *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 50 F.4th 164, 169 (D.C. Cir. 2022) (citing 8 U.S.C. § 1201(a)(1)). "'Immigrant' visas are issued to foreign nationals intending to move to the United States permanently." *Id.* "'Nonimmigrant' visas are for foreign nationals seeking to come into the country temporarily for an identified purpose." *Id.*

Under the INA, an F-1 foreign student visa may be issued to:

> [A]n alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study . . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States, particularly designated by him and approved by the Attorney General after consultation with the Secretary of Education, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student, and if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn . . . .

8 USCS § 1101(a)(15)(F)(i). "Like other visa classes defined in section 1101(a)(15), F-1 identifies entry conditions but is silent as to any controls to which these aliens will be subject after they arrive in this country." *Wash. All. of Tech. Workers*, 50 F.4th at 169. (internal quotation marks omitted). Instead, under 8 U.S.C. § 1184(a)(1), "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe[.]"

///

### 2. SEVP and SEVIS

ICE, part of the U.S. Department of Homeland Security ("DHS"), administers the F-1 visa system "through its Student and Exchange Visitor Program ('SEVP')." *Jie Fang v. Dir. United States Immigration & Customs Enf't*, 935 F.3d 172, 175 (3d Cir. 2019). SEVP monitors F-1 students "while in the United States to ensure that rules and regulations are followed by international students."[1] SEVP also manages SEVIS, an "internet-based system" that "contains information on international students, as well as the schools that enroll them." *Id.* SEVIS is used "to help monitor students and schools for compliance with U.S. laws." *Id.*

### 3. F-1 Visa Status

Under the Code of Federal Regulations, F-1 students are admitted for "duration of status" which is "defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies[.]" 8 C.F.R. § 214.2(f)(5)(i); *see also Wash. All. of Tech. Workers,* 50 F.4th at 196; *Awuku-Asare v. Garland*, 991 F.3d 1123, 1126 (10th Cir. 2021).

To maintain status, a F-1 student may not engage in certain activities specified by regulation, which include engaging in unauthorized unemployment, willfully failing "to provide full and truthful information requested by DHS," and certain criminal activity. 8 C.F.R. § 214.1(e)-(g). A student who fails to maintain F-1 status is removable. 8 U.S.C. § 1227(a)(1)(C)(i).

Separately, the Code of Federal Regulations permits the termination of nonimmigrant status in three specific circumstances: (1) "by the revocation of a waiver

---

[1] *See* DHS, Who is SEVP?, https://studyinthestates.dhs.gov/2015/01/who-sevp (last accessed April 22, 2025). The Court may "take judicial notice of the undisputed and publicly available information displayed on government websites." *King v. Cty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018).

authorized on his or her behalf under [8 U.S.C. § 1182(d)(3) or (4)]"; (2) "by the introduction of a private bill to confer permanent resident status on such alien"; or (3) "pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185 n.100 ("[T]he ability to terminate an F-1 visa is limited by § 214.1(d).").

### B. Plaintiff's Allegations

The instant case arises from the alleged termination of Plaintiff's SEVIS record. Plaintiff's Amended Complaint alleges as follows.

Plaintiff is an international graduate student who has been studying in San Diego under a F-1 visa since September 2022. ECF Nos. 3-2 at 6; 6 ¶¶ 1, 27, 29. In 2002, Plaintiff was arrested for a misdemeanor domestic violence offense. ECF Nos. 3-2 at 6; 6 ¶ 30. No charges were brought against him, and he was not convicted of any crime. ECF No. 6 ¶ 30. Plaintiff's F-1 visa expired after his arrest and he departed the United States. *Id.* ¶ 31. In 2023, the U.S. Consulate issued Plaintiff a new visa despite being aware of his arrest. *Id.* Following the issuance of his new visa, Plaintiff returned to the United States to resume his graduate studies. *Id.* ¶ 32. Plaintiff's new visa has now expired. *Id.*

On April 4, 2025, Plaintiff's SEVIS record was terminated. *Id.* ¶ 33. Plaintiff was notified of this termination four days later. ECF No. 3-2 at 6; 6 ¶ 33. The reason provided for the termination was: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ECF No. 6 ¶ 33. As a result of this termination, Plaintiff alleges he may no longer be employed in connection with his graduate studies and has experienced "high levels of stress and anxiety." *Id.* ¶¶ 36, 38.

Defendants do not dispute that Plaintiff disclosed his prior arrest at the time he applied for his new visa, or that the new visa was appropriately granted. ECF No. 12 at 3. Defendants state that they have no evidence that Plaintiff engaged in criminal activity subsequent to the 2022 arrest. *Id.* Defendants also state that, although Plaintiff's new visa expired on June 26, 2024, "he remains in lawful status as long as he maintains student

status." *Id.* at 2.

### C. Procedural Background

On April 18, 2025, Plaintiff initiated the instant lawsuit against Kristi Noem, in her official capacity as Secretary of DHS, DHS, and Todd Lyons, in his official capacity as Acting Director of ICE. ECF No. 1.

On April 21, 2015, just after 4:00 pm, Plaintiff filed the instant motion. ECF No. 3. On the same day, Defendants filed a motion to transfer venue [ECF No. 5] and Plaintiff subsequently filed an Amended Complaint [ECF No. 6]. The Amended Complaint, like the original pleading, asserts claims for violations of the Administrative Procedure Act ("APA") and procedural due process in connection with the termination of Plaintiff's SEVIS record. ECF No. 6 ¶¶ 41–56. Later in the same evening, Defendants filed an ex parte application requesting that the Court address their motion to transfer venue prior to ruling on Plaintiff's TRO application. Plaintiff filed an opposition to the application, and Defendants filed a reply. See ECF Nos. 7–9.

On the following day, April 22, 2025, the Court denied Defendants' motion to transfer venue as moot in light of the amended pleading and denied Defendants' ex parte application requesting that the Court address the motion to transfer venue on an expedited basis. ECF No. 10. The Court issued a briefing schedule on Plaintiff's TRO application and set the matter for a hearing on April 24, 2025. *Id.* at 2. Defendants filed a response to Plaintiff's TRO application on April 23, 2025. ECF No. 12. Plaintiff filed a reply brief. ECF No. 13. The Court subsequently held a hearing on Plaintiff's application on April 24, 2025.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO. Generally, a TRO is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). "[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." *Babaria v. Jaddou*, 87 F.4th 963, 976

(9th Cir. 2023). To obtain injunctive relief, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

## III. ANALYSIS

### A. Request for Temporary Restraining Order

Plaintiff moves for a temporary restraining order: (1) enjoining Defendants' termination of Plaintiff's SEVIS record and staying any legal effects resulting from this termination; (2) prohibiting Defendants from directly or indirectly implementing, enforcing, or otherwise taking action as a result of their decision to terminate Plaintiff's SEVIS record; and (3) enjoining Defendants from arresting, detaining, or transferring Plaintiff outside the jurisdiction of this District. ECF No. 3-1 at 2–3.

#### 1. Venue

Defendants argues, as a threshold matter, that "[t]his case should be transferred to the U.S. District Court for the District of Columbia where the complained-of action was taken by SEVP." ECF No. 12 at 5. After Plaintiff amended his venue allegations, this Court previously denied without prejudice Defendants' motion to transfer venue; Defendants have not re-filed a motion to transfer, and thus no such motion is pending. If Defendants file such a motion, the Court will address it. The Court is not required to rule on venue prior considering a TRO application. *See Polymer80, Inc. v. Garland*, No. 4:23-CV-00029-O, 2023 WL 3605430, at *5 (N.D. Tex. Mar. 19, 2023) (reserving question on venue until after ruling on TRO); *Kremen v. Cohen,* No. 5:11-CV-05411-LHK, 2011 WL 6113198, at *8 (N.D. Cal. Dec. 7, 2011) (finding the issuance of a TRO was appropriate even in light of potential improper venue concerns). Additionally, Defendants offer no factual support for the assertion that "the complained-of action" was taken in Washington, D.C., and they do not meaningfully respond to the venue allegations in the Amended Complaint. Accordingly, the Court turns to the merits of the TRO application.

///

    *2.*  *Likelihood of Success on the Merits*

Turning to the first *Winter* factor, Plaintiff alleges the termination of his SEVIS record violated both the APA and the Due Process Clause of the Fifth Amendment. ECF No. 6 ¶¶ 41–56. Based on the current record, the Court finds Plaintiff has established a likelihood of success as to the merits of his APA claim.

    *a.*  *APA Framework*

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). "It requires agencies to engage in 'reasoned decisionmaking,' and directs that agency actions be 'set aside' if they are 'arbitrary' or 'capricious[.]'" *Id.* (internal citations omitted); 5 U.S.C.S. § 706(2)(A). "Under this narrow standard of review, . . . a court is not to substitute its judgment for that of the agency, but instead to assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment[.]" *Id.* (internal quotation marks and citations omitted).

    *b.*  *Application of the APA*

Here, the record indicates Plaintiff's SEVIS record was terminated on April 4, 2025. ECF No. 3-2 at 13. The only explanation provided for the termination of Plaintiff's SEVIS record reads: "Individual identified in criminal records check and/or has had their VISA revoked." *Id.* There is no evidence in the record, however, that the termination of Plaintiff's SEVIS record complied with the applicable regulations. *See Wallace v. Christensen*, 802 F.2d 1539, 1552 n.8 (9th Cir. 1986) (an agency is "bound by its own regulations so long as they remain in force.").

First, there is no evidence Plaintiff's SEVIS record was terminated as a result of his failure to maintain his F-1 status. An international student F-1 student may fail to maintain status, amongst other reasons, by engaging in certain "criminal activity." 8 C.F.R. § 214.1(g). Specifically, "[a] nonimmigrant's *conviction* in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be

imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status[.]" 8 C.F.R. § 214.1(g) (emphasis added). However, in this case, while Plaintiff was arrested for a misdemeanor domestic violence offense, he was never charged or convicted. ECF No. 3-2 at 6, 9.

Plaintiff would likely succeed on an argument his mere arrest would not constitute a failure to maintain status. *See Zhuoer Chen v. Noem*, No. 25-CV-03292-SI, 2025 WL 1150697, at *5 (N.D. Cal. Apr. 18, 2025) (holding there was no evidence plaintiffs failed to maintain F-1 status where "three of the four plaintiffs" had been arrested but none had "any convictions on their record, let alone a conviction for a crime of violence with a term of imprisonment that exceeds one year."); *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *5 (W.D. Wash. Apr. 17, 2025) (holding plaintiff's DUI arrest did not meet the criteria for losing F-1 status as he had not been convicted of any crime, but had only been arrested and charged). "To the extent that Defendants terminated Plaintiff's SEVIS record merely because his name appeared in a criminal records check, that is inconsistent with their own regulation." *Doe v. Noem*, 2025 WL 1141279, at *5.

Second, there is no evidence Plaintiff's SEVIS record was terminated based on a termination of his status under one of the three enumerated circumstances set forth in the Code of Federal Regulations. *See* 8 C.F.R. § 214.1(d). Specifically, there is no evidence there was a waiver authorized on Plaintiff's behalf that was revoked, that a private bill was introduced conferring permanent resident status on him, or that DHS published a notification in the Federal Register. *See id.* Defendants have also not proffered any regulation or legal authority suggesting that the expiration of Plaintiff's F-1 visa is a permitted reason for terminating his SEVIS record. *See Doe v. Noem*, 2025 WL 1134977, at *6 ("Revocation of plaintiff's F-1 visa is not among the permitted reasons for terminating his F-1 visa status in the SEVIS system."); *see also Daou v. Noem*, No. 8:25-cv-976-MSS-AEP, 2025 WL 1148687, at *2 (M.D. Fla. Apr. 18, 2025) ("Section 214.1(d) does not provide statutory or regulatory authority to terminate F-1 student status in SEVIS based upon revocation of a visa."); *Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1114694, at

*3 (D. Mont. Apr. 15, 2025) (same).

### c. Finality of Agency Action

Defendants assert that the termination of Plaintiff's SEVIS record was not a "final" agency decision reviewable by this Court under the APA. Specifically, Defendants argue there is no evidence Plaintiff made a request to have his SEVIS record amended either "directly" or by contacting his university's Designated School Official ("DSO").[2] ECF No. 12 at 6–7.

"Section 704 of the APA provides for judicial review of '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court.'" *Int'l Bhd. of Teamsters v. United States DOT*, 861 F.3d 944, 952 (9th Cir. 2017) (quoting 5 U.S.C. § 704). "The Supreme Court has identified two conditions for agency action to be deemed final within the meaning of § 704." *Id.* "First, 'the action must mark the consummation of the agency's decisionmaking process.'" *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). "Second, 'the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.* (quoting *Bennett*, 520 U.S. at 178).

The Third Circuit's decision in *Jie Fang v. Dir. United States Immigration & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019), is instructive here. In *Jie Fang*, the Third Circuit held ICE's decision to terminate plaintiffs' F-1 visa statuses was a final decision under the APA for two reasons:

> First, there is no statutory or regulatory requirement that a student seek reinstatement after his or her F-1 visa has been terminated. Moreover, even if the students attempt to pursue the administrative procedures for reinstatement, there is no mechanism to review the propriety of the original termination order. Second, the students need not wait for

---

[2] To be SEVP-certified, a school must have dedicated employees for assisting enrolled F-1 visa students, known as Designated School Officials ("DSOs"). *See* DHS, Designated School Official, https://studyinthestates.dhs.gov/schools/get-started/designated-school-official (last accessed April 23, 2025).

removal proceedings to be instituted.

935 F.3d at 182. Similarly, Defendants here fail to identify any statute or regulation requiring a student to seek the reinstatement of his SEVIS record. Additionally, Defendants do not describe any formal mechanism by which a student can seek review. ECF No. 12 at 7. The Court concludes that the termination was a final agency action.

### d.     *Privacy Act*

Defendants also argue that Plaintiff is barred from bringing a claim under the APA, because the Privacy Act provides Plaintiff with the exclusive means to bring a suit to correct his SEVIS record. ECF No. 12 at 7.

The APA waives sovereign immunity for actions in federal court by "a person suffering legal wrong because of agency action." 5 U.S.C. § 702. The waiver "is subject to three limitations: (1) the plaintiff must 'seek[] relief other than money damages'; (2) the plaintiff must have 'no other adequate remedy'; and (3) the plaintiff's action must not be 'expressly or impliedly forbid[den]' by 'any other statute.'" *United Aeronautical Corp. v. United States A.F.*, 80 F.4th 1017, 1022 (9th Cir. 2023). Defendants argue that, under the second limitation, that Plaintiff possesses an adequate and exclusive remedy in the Privacy Act. *See* ECF No. 12 at 7. Defendants provide no authority interpreting the Privacy Act as providing an exclusive remedy for correcting a record in a government database, and indeed, courts have rejected Defendants' interpretation. *See All. for Retired Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025) ("Congress did not intend for the Privacy Act to be an "exclusive" source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA."); *Yunwei Chen v. Noem*, No. 1:25-CV-00733-TWP-MG, 2025 WL 1163653, at *5 (S.D. Ind. Apr. 21, 2025) ("[T]he Privacy Act is not the exclusive means of challenging the mishandling of federal records, so the Privacy Act does not forbid [plaintiff's] APA claims.").

Furthermore, as Defendants concede, as someone who is not a U.S. citizen or lawful permanent resident, Plaintiff *cannot* bring suit under the Privacy Act. ECF No. 12 at 7; *see*

*Soto v. United States Dep't of State,* 244 F. Supp. 3d 207, 208 (D.D.C. 2017) (holding that foreign nationals who were denied visas were not entitled to bring suit under the Privacy Act); *Raven v. Panama Canal Co.,* 583 F.2d 169, 171 (5th Cir. 1978) ("[B]y its use of a narrow definition of the word 'individual,' Congress displayed its intention to exclude foreign national and nonresident aliens from the Privacy Act."). The Privacy Act would not, therefore, provide Plaintiff with an adequate alternative remedy.

For the above reasons, the Court determines Plaintiff has established he is likely to succeed on the allegation that Defendants' termination of his SEVIS record was a violation of the APA.[3]

### 3. Irreparable Harm

Turning to the second *Winter* factor, Plaintiff argues that the termination of his SEVIS record threatens his ability to remain in the United States and continue his education and ancillary employment. ECF No. 3 at 3. In support, Plaintiff states he has a fellowship to work as a graduate student and does not expect to complete his studies in the United States until June 2028. ECF Nos. 3-2 at 6; 6 ¶ 32. Plaintiff further contends that he has been left "apprehensive" about his circumstances as the result of this termination and has been experiencing high levels of stress and anxiety. ECF Nos. 3 at 12; 6 ¶ 38.

The Court holds Plaintiff has demonstrated a likelihood of irreparable harm based on the loss of his ability to be employed as part of his graduate studies, the interruption of his educational progress, and the threat of detention and deportation. *See Zhuoer*, 2025 WL 1150697, at *5 (holding plaintiffs had demonstrated a likelihood of irreparable harm based on the interruption of their education and concerns about immediate arrest and detention); *Doe v. Noem*, 2025 WL 1141279, at *7–8 (holding irreparable harm factor was met where plaintiff faced harm of being unable to complete his doctoral program while being faced with the prospect of detention and deportation).

---

[3] Because the Court determines that Plaintiff is likely to succeed on his APA cause of action, the Court declines to address Plaintiff's due process claim at this time.

### 4. Balancing of Equities/Public Interest

Finally, with respect to the remaining *Winter* factors, "[w]hen, like here, the nonmovant is the government, the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

As noted above, Defendants' termination of Plaintiff's SEVIS record is likely to cause Plaintiff irreparable harm. In contrast, Defendants have argued that they would suffer injury from the requested TRO. Defendants state the general proposition that "[t]here is an obvious strong public interest in enforcing immigration laws," ECF No. 12-8, but do not articulate any interest implicated by the termination of Plaintiff's SEVIS record; instead, Defendants characterize that termination as "only an alleged, correctable administrative error." ECF No. 12 at 1.

On balance, the Court finds that the equities weigh in Plaintiff's favor at this preliminary stage of the proceedings. *See Roe v. Noem*, 2025 WL 1114694, at *4 (holding that balance of equities tipped in plaintiff's favor where a TRO would "preserve the status quo for the short duration until a hearing" could be held); *Zhuoer*, 2025 WL 1150697, at *5 ("The public interest is best served through a fair and thorough hearing of plaintiffs' claims, absent any distraction or confusion that would result should the government detain any of the plaintiffs."); *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) ("[T]his is a set of circumstances where the government and its decision-making processes will be best served by judicial review of a decision—and maintenance of the status quo during that review.").

For all the reasons above, the Court grants Plaintiff's request for a TRO.

### 5. Bond

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, a successful movant for a TRO must post security "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). As it is unlikely Defendants will be harmed as a result of this TRO, the Court exercises its discretion and waives the bond requirement. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)

("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.").

### B. Request for Protective Measures

Plaintiff's application also requests various protective measures: (1) allowing him to proceed in this action under the pseudonym "SD Student Doe No. 1," and (2) requiring the Parties to redact or file any information identifying Plaintiff under seal. ECF No. 3. Plaintiff asserts that, if his identity is publicized, he faces harassment or blacklisting from third parties for filing this lawsuit. ECF No. 3 at 15–17. Plaintiff's identity is now known to Defendants. ECF No. 12 at 2 n.4. Defendants' brief does not oppose either request.

"The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1042 (9th Cir. 2010); *see* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[,]"). "This presumption is loosely related to the public's right to open courts, and the right of private individuals to confront their accusers[.]" *Id.* (internal citations omitted). Parties may proceed pseudonymously only "in the unusual case when nondisclosure of the party's identity is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000). "[I]n cases where, as here, pseudonyms are used to shield the anonymous party from retaliation, the district court should determine the need for anonymity by evaluating the following factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, and (3) the anonymous party's vulnerability to such retaliation." *Id.* at 1068

Here, Plaintiff submits news article reflecting instances where enforcement actions by ICE have been accompanied by harassment or doxing of foreign students who opposed the U.S. government. ECF No. 3 at 15. Plaintiff has filed a declaration attesting to his fear of similar retaliation. ECF No. 3-2 ¶¶ 10–11. Some other courts have permitted plaintiffs to proceed pseudonymously in cases similar to this one. *See, e.g.*, *Doe v. Noem*, No. 2:25-cv-01103-DAD-AC, 2025 WL 1134977, at *6 (E.D. Cal. Apr. 17, 2025); *W.B. v. Noem*, No. 25-cv-3407-EMC, 2025 WL 1180296 at *1 n.1 (N.D. Cal. Apr. 23, 2025). As

previously stated, Defendants have not opposed this request. At this preliminary stage of the proceedings, given Plaintiff's asserted and uncontested risk of harm, the applicable factors favor granting Plaintiff leave to proceed under a pseudonym.

Consistent with this ruling, the Court finds compelling reasons to allow Plaintiff's identifying information to be filed under seal. *See generally Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1095 (9th Cir. 2016) ("[O]rdinarily a party must show 'compelling reasons' to keep a court document under seal."). Accordingly, any documents filed with the Court shall have Plaintiff's name and other identifiers redacted from the publicly filed version, and shall lodge an unredacted version of such document for filing under seal pursuant to Section 2(j) of the Electronic Case Filing Administrative Policies and Procedures Manual. Although Plaintiff's brief requests relief that goes beyond that specified in his notice of motion, the Court declines to order broader protective measures at this time. The Parties are encouraged to meet and confer to determine whether a more detailed protective order is warranted in this case, and should direct any jointly proposed protective order to U.S. Magistrate Judge Barbara L. Major.

## IV. CONCLUSION

For the foregoing reasons:

1. Plaintiff's application for a temporary restraining order is **GRANTED**. Pending the hearing and determination of a motion for preliminary injunction, Defendants are enjoined as follows:

    a. Defendants shall reinstate Plaintiff's SEVIS record, retroactive to April 4, 2025.

    b. Defendants are enjoined from taking any further action to terminate Plaintiff's SEVIS record.

    c. Defendants are enjoined from arresting or detaining Plaintiff on the basis of his immigration status, or initiating removal proceedings against Plaintiff, or removing Plaintiff from the United States, without

first providing adequate notice to both this Court and Plaintiff's counsel as well as appropriate time to contest any such action.

2. Plaintiff is **GRANTED** leave to proceed under the pseudonym "SD Student Doe No. 1." Any documents filed with the Court shall have Plaintiff's name and other identifiers redacted from the publicly filed version, and shall lodge an unredacted version of such document for filing under seal pursuant to Section 2(j) of the Electronic Case Filing Administrative Policies and Procedures Manual.

3. Plaintiff's application for a TRO shall be construed as a noticed motion for a preliminary injunction, for which the Court sets the following schedule, to which the Parties agreed at the hearing

 a. Defendants shall file their opposition by **May 15, 2025**;

 b. Plaintiff shall file any reply by **May 22, 2025**;

 c. The motion for preliminary injunction will be heard on **June 12, 2025** at **1:30pm** in **Courtroom 3B**.

4. No bond under Rule 65(c) is required.

**IT IS SO ORDERED.**

Dated: April 24, 2025

_____
Hon. Robert S. Huie
United States District Judge